UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| HELEN LURENE ELIAS | CIVIL ACTION NO. 26-0020 |
| | SECTION P |
| VS. | |
| | JUDGE JAMES D. CAIN, JR. |
| U.S. IMMIGRATION & CUSTOMS ENFORCEMENT | MAG. JUDGE DAVID J. AYO |

## REPORT AND RECOMMENDATION

Petitioner Helen Lurene Elias,[1] a detainee at South Louisiana ICE Processing Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [Doc. 16]. For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Barbados. [Doc. 1-2, p. 3]. She entered the United States on approximately March 15, 1991, "as a nonimmigrant visitor authorized to remain until June 14, 1991, and remained beyond that period without authorization." [Doc. 16, p. 1].

On May 15, 2025, an immigration judge ordered Petitioner removed from the United States. [Doc. 1, p. 4]. On June 13, 2025, Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"). *Id.* On October 6, 2025, the BIA dismissed Petitioner's appeal. *Id.*

---

[1] Petitioner's "A-Number" is 206-552-763.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On approximately October 20, 2025, Petitioner appealed the BIA's decision to the United States Court of Appeals for the Second Circuit. *Elias v. Blanche*, No. 25-2576 (2nd Cir). The same day, Petitioner moved the appellate court for a stay of removal. Petitioner's appeal is pending. *Id.*

Petitioner filed this proceeding on approximately December 29, 2025. [Doc. 1, p. 8]. Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), she claims that she "has been detained by ICE beyond the removal period" and that ICE is not likely to remove her in the near future. [Docs. 1, p. 6; 1-2, p. 2]. She has fully cooperated with ICE "by providing fingerprints and other identification documents including" her original passport. [Doc. 1-2, p. 3].

On April 24, 2026, Respondents moved the Second Circuit to expedite a decision on Petitioner's motion for a stay of removal. [Doc. 16-4].

Respondents opposed the instant petition on April 27, 2026. [Doc. 16]. They contend that they are "actively pursuing Petitioner's removal, including coordinating travel document requests . . . ." *Id.* at 2. They attach the declaration of Charles Ward, Assistant Field Office Director, who declares in part:

> On or about March 23, 2026, ERO Headquarters noted that the travel documents request needed to be submitted to the Barbados Embassy/Consulate in Miami, FL. ERO Headquarters requested an itinerary be submitted with the travel document request. [] On or about April 9, 2026, ERO Headquarters noted the Petitioner has a stay of removal and the Post Order Custody Review clock should be paused . . . .

[Doc. 16-3, p. 2].

Respondents highlight that they moved to expedite Petitioner's motion for a stay of removal because they intended to move forward with removing Petitioner. *Id.* at 1. When Respondents filed their opposition, Petitioner's motion for a stay of removal was pending. In the opposition, Respondents state: "The only present impediment to execution of removal is the forbearance policy associated with Petitioner's pending petition for review before the

United States Court of Appeals for the Second Circuit." *Id.* at 1.  They maintain that "under the Government's forbearance policy, a noncitizen who has filed a motion for a stay of removal will not be removed unless and until the Court denies that request." *Id.* at 4.  According to Respondents, "Removal efforts are ongoing, subject to the temporary pause required by the pending petition for review and the Second Circuit's forbearance policy." *Id.* at 5.

On May 7, 2026, the Second Circuit denied Petitioner's motion for a stay of removal.

### Jurisdiction

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687.  The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings.  *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005).  District courts may not review challenges to final orders of removal.  8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007).  And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While § 1252(a)(2)(B)(ii) undoubtedly bars judicial review of

individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 Fed. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

**Law and Analysis**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533

4

U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.  "[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, she has been detained over one year following her administratively final order of removal.  Petitioner, however, does not meet her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.  Stripped of her formulaic assertions that removal is not reasonably foreseeable, Petitioner pleads only that she has fully cooperated with ICE "by providing fingerprints and other identification documents including" her original passport. [Doc. 1-2, p. 3].  This does not meet her initial burden of proof in showing that there is no significant likelihood of removal in the reasonably foreseeable future.[4]  As Respondents argue, Petitioner

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

[4] *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (aliens must present sufficient evidence establishing that there is no significant likelihood of removal in the reasonably foreseeable future and

"identifies no diplomatic barrier, no refusal by the receiving country, and no legal impediment to repatriation." [Doc. 16, p. 3]. Moreover, Petitioner has not been detained for an extended and excessive duration. And as to efforts to remove Petitioner, Respondents maintain that "ICE is actively pursuing removal to Barbados, including initiating travel document requests and coordinating with relevant authorities." [Doc. 16, p. 3].

In addition, Petitioner is largely responsible for any asserted delay in her removal. Her order of removal became administratively final on October 6, 2025, when the BIA denied her appeal.[5] However, from approximately October 20, 2025—when Petitioner moved the Second Circuit for a stay of removal—until May 7, 2026—when the Second Circuit denied the motion—the Government adhered to the 'forbearance policy' and forbore removal because Petitioner chose to move for a stay of her removal. For the majority of the six-month 'presumptively reasonable period' set forth in *Zadvydas*, the Government forbore removal because of Petitioner's motion. Petitioner moved for a stay, and, in a sense, the Government obliged (until the Second Circuit denied the motion).

Respondents argue that the delay while Petitioner's motion for a stay was pending was "temporary and litigation-based, not diplomatic or practical." [Doc. 16, p. 4]. They argue

---

not merely offer conclusory statements); *Ropati v. Lynch*, No. 6:17-CV-0219, 2017 WL 5560656, at *2 (W.D. La. Apr. 18, 2017), *adopted by,* No. 6:17-CV-00219, 2017 WL 5614942 (W.D. La. Nov. 16, 2017).

[5] Under 8 U.S.C. § 1231(a)(1)(B), "The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." Here, Petitioner's removal period began when the date of her removal order became administratively final. It did not begin under (ii) above because a court did not order a stay of her removal.

6

further, "Petitioner may not rely on a delay attributable to her own petition for review to establish that removal is not reasonably foreseeable."[6] *Id.* The undersigned agrees.[7]

That Petitioner's appeal is still pending before the Second Circuit does not mean that removal is not significantly likely in the reasonably foreseeable future. In *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004), for instance, the petitioner's "sole challenge to detention depend[ed] on the outcome of his petition for review, which only the Ninth Circuit ha[d] jurisdiction to resolve." The court concluded that the petitioner's detention was "neither indefinite nor potentially permanent like the detention held improper in *Zadvydas;* it [was], rather, directly associated with a judicial review process that has a definite and evidently impending termination point, and, thus, [was] more akin to detention during the administrative review process, which was upheld in *Demore v. Kim,* 538 U.S. 510, 527–29, 531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) ('Detention during removal proceedings is a constitutionally permissible part of that process.')." *Id.*; *see Andrade*, 459 F.3d at 543-44

---

[6] Respondents also point out that they "actively [sought] to remove that procedural barrier through expedited consideration of the stay motion . . . ." *Id.*

[7] *See Guangzu Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) ("Thus the Government has been prevented from removing Zheng by . . . its own forbearance policy (also resulting from Zheng's pursuit of an additional stay). If this Court denies Zheng's petition for review and pending stay motion, the Government can seek another travel document. Given this record, Zheng has not 'provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'"); *Thelemaque v. Gillis*, No. 5:20-CV-103-DCB-MTP, 2020 WL 8091143, at \*2 (S.D. Miss. Dec. 4, 2020), *report and recommendation adopted,* No. 5:20-CV-103-DCB-MTP, 2021 WL 76973 (S.D. Miss. Jan. 8, 2021) ("[Petitioner] argues that the forbearance agreement, and the resulting delay in removal, make it unlikely that he will be removed in the reasonably foreseeable future. . . . Courts, however, have held that the forbearance agreement, without more, does not give petitioners a basis to argue that there is no significant likelihood of removal in the reasonably foreseeable future. . . . [T]he forbearance agreement is no longer preventing Petitioner's removal, and Petitioner has failed to show any remaining barriers to his removal now that his appeal is resolved.") (citing similar holdings); *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("[S]ince the filing of this appeal in June 2005, Abimbola has filed two other actions in this Court alone, and filed motions to stay his removal, which trigger the application of this Court's forbearance policy. As the District Court noted, a self-inflicted wound should not establish grounds for Abimbola's *Zadvydas* claim."); *Jimenez v. Searls*, No. 23-CV-379 (JLS), 2024 WL 1286039, at \*3 (W.D.N.Y. Mar. 25, 2024); *D'Alessandro v. United States*, No. 13-CV-416-RJA, 2024 WL 3759759, at \*3 (W.D.N.Y. Aug. 12, 2024).

("Andrade has offered nothing beyond his conclusory statements suggesting that he will not be immediately removed to Cape Verde following the resolution of his appeals.").

<u>**Conclusion**</u>

For the reasons above, **IT IS RECOMMENDED** that Petitioner Helen Lurene Elias's petition for habeas corpus be **DISMISSED WITHOUT PREJUDICE** to Petitioner's right to re-urge her claim of prolonged detention if she has good reason to believe, in light of any changes in circumstance or new evidence, that her removal is not significantly likely in the reasonably foreseeable future.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

In Chambers, Lafayette, Louisiana, this 9th day of June, 2026.

_____
David J. Ayo
United States Magistrate Judge